<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| Audberto Egipciaco, | : | |
| | : | Civil Action No. 12-4718(NLH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| Charles Warren, et al., | : | |
| | : | |
| Respondents. | : | |

APPEARANCES:

Audberto Egipciaco
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625-0861
    Petitioner <u>pro</u> <u>se</u>

Nancy P. Scharff
Assistant Camden County Prosecutor
25 North Fifth Street
Camden, NJ 08102-1231
    Counsel for Respondents

**HILLMAN**, District Judge

    This matter is presently before the Court pursuant to the

submission of a Petition for a Writ of Habeas Corpus under Title

28 U.S.C. § 2254 [Doc. No. 1], by the Petitioner Audberto

Egipciaco ("Petitioner").  For the reasons stated below, the Petition will be denied.

## I.  Procedural History and the Present Petition

Petitioner is presently confined at New Jersey State Prison, in Trenton, New Jersey.  (Pet. at 1.)  He is imprisoned after conviction by a jury in the Superior Court of New Jersey, Camden County on May 6, 2003, for:  three counts of armed robbery (first degree), in violation of  N.J.S.A. 2C:15-1; one count of aggravated assault (third degree), in violation of N.J.S.A. 2C:12-1b(2); one count of burglary (second degree), in violation of N.J.S.A. 2C-18(2); two counts of aggravated assault (fourth degree), in violation of N.J.S.A. 2C:12-1b(4); two counts of endangering the welfare of a child (third degree), in violation of N.J.S.A. 2C:24-4a; and three counts of criminal restraint (third degree), in violation of N.J.S.A. 2C:13-2a. (Pet. at 4; Answer at 2-3 [Doc. No. 9.])

On June 20, 2003, Petitioner was sentenced to an aggregate 65-year sentence with a parole ineligibility term of 29 years, 9 months and 3 days.  (Answer at 3; June 20, 2003 Sentencing Transcript ("Rta11") at 25 [Doc. No. 10-11]; Judgment of Conviction ("Ra3") [Doc. No. 9-5.]  Petitioner filed a direct appeal, and his conviction was affirmed on February 7, 2006, but

the case was remanded for resentencing.  (Pet., ¶ 9.)[1]

Petitioner appealed to the New Jersey Supreme Court, and it

denied certification on November 2, 2007.  (Pet., ¶ 9(d),

Answer, ¶ 9.)

Petitioner filed a petition for post-conviction relief in

the Superior Court of New Jersey, Camden County ("PCR Court"),

alleging the following:

> 1A "Trial Counsel failed to call essential
> witnesses to testify at trial; (B) Trial Counsel
> failed to cross examine in an effective manner; (C)
> Trial Counsel failed to object to the jury charge on
> accomplice liability; (D) trial Counsel failed to hire
> an appropriate expert witness to testify at trial; (E)
> Trial counsel failed to consult with [Defendant]; (F)
> Trial Counsel was ineffective for not properly
> advising Defendant on his right to testify; (G) Trial
> Counsel failed to prepare for trial. (2) Trial Counsel
> was ineffective for failing to use evidence of Carmen
> Garcia's convictions to impeach her credibility. (3)
> the Trial Court erred [when it] admitted the
> impermissibly suggestive out of Court and tainted in
> Court identifications of Defendant, which violated
> Defendant's due process U.S.C.A. Const. Amends. 5, 14.
> (4) The Prosecutor's failure to provide Defense
> Counsel with the new incriminating testimony of the
> eyewitnesses was a discovery violation, and therefore
> the Trial Judge, in denying the Defendant's Motion for
> a Mistrial following surprise incrimination testimony
> which had not been disclosed to the defense, and
> deprived the Defendant of his constitutional rights to
> [due] process and a fair trial.  U.S. Const. Amends.
> VI, XIV. (5) Trial Counsel was ineffective for
> failure to object, and file any Limine Motion prior to
> trial, or at the end of the State's case to have

---

[1] Upon resentencing on April 28, 2006, the court determined the
sentence imposed would not change under intervening law.
(Answer, ¶ 9.)  Petitioner appealed the sentence, and the New
Jersey Superior Court Appellate Division ("Superior Court")
denied the appeal on July 24, 2007.  (Id.)

counts seven and eight dismissed, because the verdicts
as to endangering the welfare of a child, contrary to
counts seven and eight was against the weight of the
evidence and denied Defendant a fair trial on all
other counts.  (6) Because of Trial Counsel's
ineffective assistance the Court denied Defendant due
process of law and a fair trial by restricting his
counsel's opening statements.  (7) Trial Counsel was
ineffective for failure to object to a jury
instruction which amounted to an ultimatum.  (8)
Cumulative errors by Trial Counsel amounted to
ineffective assistance of Counsel.  (9) The Defendant
was denied the effective assistance of Counsel on
direct appeal in violation of New Jersey Const. Art. 1
Par. 10, as well as the United States Constitution
Amendment 6.  (10) The cumulative effect of the Trial
Court's error violated the Common Law of New Jersey
and the due process [clause] of the United States
constitution.  (11) Defendant is entitled to an
evidentiary hearing in support of his Petition for
Post-Conviction Relief.  Petitioner was denied a fair
trial with effective assistance of counsel.

(Pet., ¶ 11); see also briefs submitted to PCR Court, Ra11-Ra15

[Doc. No. 9-14 through 9-18.]  An evidentiary hearing was held,

and the Petition was denied on July 17, 2009.  (Answer, ¶ 11.)

Petitioner appealed but the Superior Court affirmed the PCR

Court on September 26, 2011.  (Id.)  The New Jersey Supreme

Court denied certification on April 9, 2012.  (Id.; Pet., ¶ 11.)

    In the present Petition, Petitioner raised all of the same

grounds that he raised in his post-conviction brief, using the

same numbering.  (Pet., ¶ 12, Ground One).

## II.   Response to the Petition and Replies

    Respondents asserted two affirmative defenses in their

Answer:  (1) Petitioner failed to establish a prima facie case

of ineffective assistance of counsel; and (2) Petitioner's claims in Ground One, Subpoints 1C, 3, 4, 5, 6, 7, 8 and 10 are procedurally defaulted. (Answer at 13.)

Petitioner filed a reply entitled "Petitioner Audberto Egipciaco's Memorandum in Support of Habeas Corpus Relief." ("Petr's Mem.")[Doc. No. 14]. Petitioner reasserted his claims and contended he had set forth an ineffective assistance of counsel claim upon which relief may granted:

> because the decision rendered on his appeal was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Harrington v. Gillis, 456 F.3d 118 (2006); Williams v. Taylor, 529 U.S. 362, 146 L.Ed.2d 389; 120 S.Ct. 1495.

(Id. at 4.)

Petitioner also asserted a claim of ineffective assistance of appellate counsel, claiming that counsel was ineffective for failing "to raise the important issues raised in the PCR Petition filed by Petitioner." (Id. at 20-21.) Finally, Petitioner challenged his sentence as excessive, and imposed in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000). (Id. at 23.) Respondents objected to Petitioner raising a new sentencing claim in his reply. (Letter)[Doc. No. 15].

Petitioner then submitted additional evidence in support of his claims (Letter)[Doc. No. 16.]

Respondents objected to Petitioner's submission of evidence outside of the state court record, including a cover letter from the prosecutor regarding discovery information, and a letter to an investigator from Petitioner's co-defendant's counsel. (Letter at 2)[Doc. No. 17.]  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  This Court will not consider the new evidence.

III.   <u>ANALYSIS</u>

A.   <u>Procedural Default</u>

A state prisoner must exhaust the remedies available in state courts before bringing his federal habeas petition, unless "there is an absence of available state corrective process[] or . . . circumstances exist that render such process ineffective.")) The exhaustion requirement gives the state courts "'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" <u>Collins v. Penn. Sec. of Dept. of Corr.</u>, 742 F.3d 528, 542 (3d. Cir. 2014)(quoting <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004)(quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)(per curiam)); 28 U.S.C. § 2254(b)(1).

6

A habeas petitioner exhausts his state court remedies by presenting his federal constitutional claims at each level of state court empowered to hear such claims, including direct appeal and post-conviction proceedings.  28 U.S.C. § 2254(c); Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)).  A claim is not only unexhausted but is also procedurally defaulted if state procedures prohibit the petitioner from later presenting the unexhausted claim in state court.  Id. (citing Jimenez v. Walker, 458 F.3d 130, 149 (2nd Cir. 2006).

Procedural default may be excused and a federal habeas court may address the claim if the petitioner shows cause and prejudice for the default or that a fundamental miscarriage of justice will occur if the claim is not addressed.  Id. at 542, n. 8 (citing Jimenez, 458 F.3d at 149) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)).  "The existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray, 477 U.S. at 488.  The prejudice required to excuse procedural default is more than the possibility of prejudice, but that the trial errors "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions."  Albrecht v.

7

Horn, 485 F.3d 103, 124, n. 7 (3d Cir. 2007)(quoting Murray, 477 U.S. at 494)).

Procedural default may also be excused if a "fundamental miscarriage of justice" will occur if the habeas court does not address the merits of the claim.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  "To establish a miscarriage of justice excusing a procedural default a habeas petitioner must 'persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002)(quoting Schlup v. Delo, 513 U.S. 298, 329 (1995).  Thus, "[a]n allegation of 'actual innocence' if credible, is one such 'miscarriage of justice' that enables courts to hear the merits" of otherwise procedurally defaulted habeas claims.  Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004).

Respondents contended Petitioner's claim that trial counsel was ineffective for failing to object to a jury instruction (Ground One, 1C) is procedurally defaulted under state law. When Petitioner raised the issue in the PCR Court, the court found the claim was procedurally defaulted, because Petitioner could have raised it on direct appeal without expanding the record.  (PCR Motion Transcript ("Rta14") at 40-41 [Doc. No. 10-14].  New Jersey Court Rule 3:22-4 bars from post-conviction

8

proceedings grounds for relief not raised in appeal of proceedings resulting in the conviction (with limited exceptions not applicable here).  The Superior Court affirmed on appeal. (State v. Egipciaco, A-003812-09T1 (Sept. 26, 2011) ("Ra21") at 7) [Doc. No. 9-24.]

Indeed, Petitioner could have raised the claim on direct appeal without expanding the record.  He was present at trial and knew counsel had not objected to the jury instruction. Therefore, the claim is procedurally defaulted under N.J.Ct.R. 3:22-4.  This Court will deny Ground 1C.

Respondents contended that Ground One, Subpoint 4, whether the trial court erred by failing to grant a mistrial based on an alleged discovery violation, is also procedurally defaulted albeit for a different reason.  The Superior Court denied the claim on direct appeal, and the PCR Court thus ruled the claim was procedurally defaulted under state law, pursuant to N.J.Ct.R. 3:22-5.  (Rta14 at 41.)  The PCR Court was affirmed on appeal.  (Ra21 at 11.)

New Jersey Court Rule 3:22-5, governing post-conviction relief, provides:

> A prior adjudication upon the merits of any
> ground for relief is conclusive whether made
> in the proceedings resulting in the
> conviction or in any post-conviction
> proceeding brought pursuant to this rule or
> prior to the adoption thereof, or in any
> appeal taken from such proceedings.

Thus, this habeas claim is procedurally defaulted because the state appellate court reviewing the PCR petition dismissed the claim on a state procedural ground.  The Court will deny Ground One, Subpoint 4.

In Ground One, Subpoint 3, Petitioner alleged the trial court erred by admitting improper identification evidence. Respondents argued the claim is procedurally defaulted because Petitioner could have brought the claim in his direct appeal but did not.  Petitioner was, of course, aware of the identification evidence that was admitted at trial, and he could have raised any constitutional claims regarding admission of the evidence on direct appeal.  This claim is procedurally defaulted, pursuant to N.J.Ct.R. 3:22-4.  The Court will also deny Ground One, Subpoint 3.

Petitioner has not asserted an external cause that prevented him from bringing Ground 1C or Ground One, Subpoint 3 at the appropriate time in the state courts, nor has he offered new evidence to show actual innocence that would excuse procedural default of these habeas claims.  Thus, none of his procedurally defaulted habeas claims discussed above will be addressed on the merits.

Respondents contended the claims Petitioner raised in Ground One, Subpoints 5, 6, 7, 8 and 10 are claims about trial

10

court rulings which Petitioner should have brought on direct appeal, but he instead brought the claims under the guise of ineffective assistance of counsel in the PCR Court.  Respondents asserted the claims are procedurally defaulted because Petitioner could have proceeded on direct appeal and failed to do so.

It is true that Petitioner brought these claims as ineffective assistance of counsel claims in a post-conviction proceeding.  (Supp. Brief in Further Supp. of Audberto Egipciaco Application for Post-Conviction Relief ("Ra12") at 4)[Doc. No. 9-15.]  The PCR Court did not find the claims procedurally barred, however, and addressed the claims on the merits, although only to state that they would be dismissed because they were no more than bald assertions.  (PCR Court Order, July 17, 2009 ("Ra16")[Doc. No. 9-19]; Ra21 at 44-45).  The claims might have been stated differently and brought on direct appeal, but the PCR Court addressed the merits of the claims, and this Court will do the same, giving proper deference to the PCR Court decision under § 2254.  See Jones v. Phelps, 2015 WL 394625, at *2 (3d Cir. 2015)(addressing potentially defaulted claims that were addressed on the merits by the state post-conviction court).

B.   Ineffective Assistance of Counsel

1.   Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus
> on behalf of a person in custody pursuant to
> the judgment of a State court shall not be
> granted with respect to any claim that was
> adjudicated on the merits in State court
> proceedings unless the adjudication of the
> claim--
>> (1) resulted in a decision that was
>> contrary to, or involved an
>> unreasonable application of, clearly
>> established Federal law, as determined
>> by the Supreme Court of the United
>> States; or
>> (2) resulted in a decision that was
>> based on an unreasonable determination
>> of the facts in light of the evidence
>> presented in the State court
>> proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from Supreme Court precedent and arrived at a different result than the Supreme Court.  Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013)(citing Williams v. Taylor, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application.  Id. (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).  Where a state court has summarily denied a claim, § 2254(d) still applies.  Pinholster, 131 S.Ct. at 1402.

When this occurs, the habeas petitioner can only satisfy the "unreasonable application" clause of § 2254(d) by showing that "there was no reasonable basis" for the state court's decision.  Id. (quoting Harrington v. Richter, 131 S.Ct. 770, 784 (2011)).  A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision.  Richter, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Here, Petitioner has not presented any Supreme Court cases that are materially indistinguishable from his own case and were wrongfully applied.  Petitioner acknowledged the state courts correctly identified Strickland v. Washington, 466 U.S. 668 (1984), as the Supreme Court case that governs his ineffective assistance of counsel claims.  (Petr's Mem. at 9.) Additionally, Petitioner has not alleged any particularized claim that the state court's determination of the facts was unreasonable.  The Court, therefore, will address only the "unreasonable application" prong of § 2254(d)(1).

### 2.   State Court Factual Findings

The facts, as stated by the Superior Court on direct appeal, are as follows.  In the evening of January 23, 2001,[2]

---

[2] The PCR Court found that the crime occurred at approximately 7:15 p.m.  (Rta14 at 35.)

13

Carmen Garcia, her husband Julio Vasquez, their friend Norma
Garcia, and several of Norma's children, including 16-year-old
Catherine Morales ("Catherine"), were at Carmen Garcia's home in
Camden when two masked men entered their apartment.  State v.
Egipciaco, 2006 WL 2668530 (N.J.Super.A.D. Feb. 7, 2006);
(Appellate Division Order ("Ra9")[Doc. No. 9-12.]  Catherine
later testified that she recognized one of the men as a family
friend.  Id. at *1.  Catherine ran upstairs, and the man she had
identified followed her.  Id.  The other man stayed downstairs
and put a gun to Norma's head, demanding money and jewelry.  Id.

     In the meantime, upstairs, Petitioner threw Carmen to the
floor, hit her, and took her jewelry.  Id.  Reyes, the co-
defendant, went upstairs, and Petitioner directed him to look
for jewelry in the closet.  Id.  Carmen recognized Petitioner's
voice, his eyes, and his ponytail.  Id.  She had known him for
twenty years.  Id.  Julio, who was also upstairs, recognized
Petitioner's voice and ponytail.  Id.  When Julio ran to
Carmen's defense, Petitioner hit him on the right side of his
head with the gun.  Id.

     Maria Morales ("Morales") was on her way to visit Julio and
Carmen, and Carmen yelled out the window of the apartment that
they had just been robbed and the robbers were leaving the
building.  Id. at *2.  Morales saw two masked men leaving the
building, and they pulled their masks up, allowing her to see

14

their faces.  Id.  She recognized Petitioner and Reyes, but
identified them only by their nicknames.  Id.  Morales went home
and called 9-1-1.  Id.

Petitioner was a longtime friend of Carmen and Julio, and
had been at their apartment earlier on the day of the robbery,
as had Morales.  Id.  Officer Alicea, a relative of Reyes,
responded to Morales' call and went to the scene of the crime.
Morales told the Officer that Reyes robbed her aunt.  Id.  Reyes
was brought in as a suspect and Morales identified him.  Id.
Several days later, Morales happened to see Petitioner in a
courtroom, and she told the Sheriff who was present about the
robbery.  Id.  Petitioner was immediately arrested as a suspect.
Id.  A few months later, Morales identified Petitioner in a
photo array, and she later made an in-court identification of
him.  Id.

Another officer, Frank Colon, was also dispatched to the
scene of the crime, and Carmen and Julio told him they had
recognized Petitioner's voice.  Id.  This information was not
contained in the report of the first officer to arrive at the
scene, Officer Alicea.  Id.  Detective Finneman also went to the
scene of the crime and wrote a report indicating that he briefly
interviewed Carmen and Julio, and that they had not identified
the suspects.  Id.  Carmen and Julio later identified Petitioner
from a photo array in the prosecutor's office, on March 22,

15

2001.  Id.  They also identified Petitioner in the courtroom.
Id.

At trial, Petitioner presented testimony from an alibi
witness, Maria Concepcion ("Concepcion").  Id.  She said she was
with Petitioner at the time of the robbery on January 23, 2001.
Id.  Petitioner had picked her up from work at Virtua Hospital,
they went to a Pathmark store, and then spent the evening in her
home.  Id.  A video from the Pathmark store was shown at trial.
Id.  It showed Concepcion walking with someone, whom she
identified as Petitioner.  Id.  The date and time of the video
was January 23, 2001 at 6:35 p.m.  Id.

Petitioner moved for a mistrial based on surprise testimony
by Carmen, Julio, and Officer Colon, that Carmen and Julio
identified Petitioner on the night of the crime.  Id.  The
motion for a mistrial was denied.  Id.  The trial judge denied
the motion because the defense received discovery indicating
that Carmen would testify at trial that she identified
Petitioner by his hair and his eyes.  Id. at 3.

On appeal, Petitioner argued he had relied on the police
reports in forming the misidentification defense.  Id. at 4.
The Superior Court held the discovery violation did not deprive
Petitioner of a fair trial, because the testimony that had not
been produced to the defense before trial only went to the
timing of when Carmen and Julio first identified Petitioner.

16

Id. at *5-6.  The Superior Court also acknowledged Petitioner's sentencing claims but did not address the merits of those claims because the case was remanded for resentencing due to an intervening change in the law, and Petitioner would be able to raise his claims upon resentencing.  Id. at 7.

A PCR hearing was held on July 17, 2009, and the court read its findings into the record at the end of the hearing.  (Rta14 at 26-50.)  The Superior Court affirmed the PCR Court, and held:

> To the extent that [Petitioner's contentions] were or could have been raised on direct appeal, they are barred by *Rule 3:22-4* and *Rule* 3:22-5. Those arguments not barred by the *Rules* are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11-3(e)(2). Having reviewed the record, including the original trial transcript, we affirm substantially for the reasons stated in Judge Natal's opinion. We add the following comments.

(Ra21 at 11.)

The Superior Court added that Judge Natal, who conducted the PCR hearing, did not find Petitioner to be a credible witness, and there was no basis in the record to disturb this finding.  Id. at *5.  The court also agreed with Judge Natal's finding that Petitioner's allegations of ineffective assistance of counsel were no more than bald assertions.  Id.  For example, Petitioner alleged counsel failed to cross examine Carmen Garcia about her criminal record, but Petitioner did not produce any

17

evidence about her prior convictions or explain how the convictions would have affected her credibility.  Id.  The court also addressed Petitioner's ineffective assistance of appellate counsel claim, finding that none of the claims Petitioner alleged appellate counsel should have raised on direct appeal would have succeeded.  Id.

 3.   Merits of the Remaining Habeas Claims

 The test announced by the Supreme Court in Strickland, 466 U.S. at 687, governs claims that a Petitioner was denied a fair trial because his counsel provided ineffective assistance.  See Lafler v. Cooper, 132 S.Ct. 1376, 1384-85 (2012)(applying Strickland test in habeas case where petitioner challenged counsel's deficient performance in advising the petitioner to reject plea offer and go to trial).  The Strickland test has two prongs:

>           First, the defendant must show that
> counsel's performance was deficient.  This
> requires showing that counsel made errors so
> serious that counsel was not functioning "as
> counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must
> show that the deficient performance
> prejudiced the defense.  This requires
> showing that counsel's errors were so
> serious as to deprive the defendant of a
> fair trial, a trial whose result is
> reliable.

Strickland, 466 U.S. at 687.

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler, 132 S.Ct. at 1384 (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)).  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough, 540 U.S. at 8 (citing Bell v. Cone, 535 U.S. 685, 702 (2002); Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Strickland, 466 U.S. at 689; United States v. Cronic, 466 U.S. 648, 656 (1984)).

In cases where the record does not explicitly disclose trial counsel's actual strategy or lack thereof . . . the presumption may only be rebutted through a showing that no sound strategy posited [by the Respondent] could have supported the conduct.  Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005) (citing Yarborough v. Gentry, 540 U.S. 1, 8 (2003)(per curiam)).  "[The Antiterrorism and Effective Death Penalty Act' requires that [habeas courts] 'determine what arguments or theories supported . . . or could have supported, the state court's

decision.'" Collins, 742 F.3d at 547 (3d Cir. 2014)(quoting Richter, 131 S.Ct. at 786).

The second prong of the Strickland test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694). The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. Lafler, 132 S.Ct. at 1394 (quoting Strickland, 466 U.S. at 696). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" Collins, 742 F.3d at 547 (quoting Strickland, 466 U.S. at 694). "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." Id. (citing Rolan v. Vaugh, 445 F.3d 671, 682 (3d. Cir. 2006)).

### a.   Ground 1A, Alibi Witnesses

Respondents contended the PCR Court properly applied the Strickland test in denying Petitioner's ineffective assistance of counsel claims for the following reasons.  Regarding Ground 1A of the habeas petition, Petitioner was allowed to present evidence in the PCR Court concerning his claim that counsel failed to secure the testimony of his alibi witnesses.  (Rta14 at 5-7, 11-14, 19-25.)  Petitioner testified at the hearing, but he did not call his alibi witnesses.  (Id.)

Petitioner admitted to the PCR Court that he was really only concerned with trial counsel's failure to call two of his alibi witnesses, Michael and Luciano Concepcion. (Rta14 at 23-24.) However, Petitioner admitted they were not with him at the Pathmark store, which was the alibi he presented at trial. (Id. at 21-22.) He wanted to establish he was with them later that evening, because an investigator told the jury Petitioner would have had time to commit the robbery after he left the Pathmark store. (Id. at 22.) The PCR Court found these witnesses would not have provided an alibi because they were not with Petitioner in the Pathmark store, therefore, Petitioner failed to establish a prima facie claim of ineffective assistance of counsel. (Id. at 38-39, 45-47.)

The Superior Court affirmed, noting Petitioner testified in the PCR hearing that he told his counsel about Michael and Luciano Concepcion, but counsel told him their testimony was not necessary, and Petitioner did not dispute this at the time. (Ra21 at 5.) Petitioner said he was not thinking straight because he was on medication, but the Superior Court noted he did not produce any evidence that he was on medication. (Id.)

Petitioner contended the state court decision was based on an unreasonable application of the test announced by the Supreme Court in Strickland, although he offered little in the way of explanation. (Petr's Mem. at 7-10.) He generally asserted that

counsel failed to call alibi witnesses who were prepared to testify he was with them at the time of the crime. (Id. at 10.) Regarding prejudice, Petitioner asserted that if counsel had subpoenaed the additional witnesses to testify, counsel would have proceeded differently at trial. (Id.) Petitioner contended the harm of failing to call these witnesses is compounded by the fact that witnesses who testified at trial gave conflicting testimony, although he did not fully explain this contention. (Id. at 11.) Petitioner alleged that trial counsel failed to prepare for trial because he did not interview these essential witnesses. (Id. at 12.)

When counsel focuses on some issues to the exclusion of others, "there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough, 540 U.S. at 8. Such a presumption has "'particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)).

Petitioner did not present testimony from his trial counsel at the PCR hearing, thus, the Court has only the trial record from which to glean counsel's trial strategy. Petitioner's trial counsel presented an alibi defense that he was with Maria

Concepcion in a Pathmark store at the time of the robbery.
(Trial Transcript ("Rta8") at 32-33, 40-44)[Doc. No. 10-8.]
Counsel may well have chosen to pursue this alibi because it was
supported by video evidence, purporting to show Petitioner was
with Maria Concepcion at the Pathmark store very close to the
time of the robbery.  Any alibi without corroborating evidence,
such as Michael and Luciano's testimony that they were with
Petitioner later that night, would force the jury to weigh the
credibility of the multiple eyewitnesses to the crime against
the credibility of the alibi witnesses, whom had a relationship
with Petitioner, giving them a motive to lie to protect him.

Ms. Concepcion's testimony was that Petitioner was with her
all night, and he stayed overnight at her house because she was
too tired to drive him home, and she needed him to drive her to
work the next morning, since he was going to borrow her car
during the day.  (Trial Transcript ("Rta7") at 26-37, 46-51, 66)
[Doc. No. 10-7.]  Also, because one of her sons was using her
other car, she and Petitioner had to share the one car.  (Id.)
This testimony would conflict with Petitioner's proposed alibi
testimony, that Michael and Luciano Conception were with
Petitioner the rest of that evening in Maria Concepcion's home.
The jury might have concluded that if they had been there, one
of them could have driven Petitioner home that night or driven

23

Maria to work the next morning, calling her testimony into question.

There is, therefore, a sound strategy that might have supported trial counsel's decision to call only Maria Concepcion; she could provide the strongest possible alibi defense, corroborated by video evidence. This Court, therefore, finds the state courts did not unreasonably apply <u>Strickland</u> in determining that counsel's performance was not deficient.

Moreover, even if counsel had presented testimony from Michael and Luciano Concepcion, the jury may not have found the testimony credible, given that they rejected Maria Concepcion's testimony that he was with her all night. The jury had to choose between the credibility of multiple eyewitnesses, at least one of whom knew Petitioner very well, and his alibi witness, and they chose to believe the eyewitnesses. The Court cannot conclude that if Michael and Luciano also testified they were home with Maria and Petitioner later that evening, the outcome of the trial would have been different. Therefore, this Court will deny Petitioner's ineffective assistance of counsel claim based on failure to call additional alibi witnesses (Ground 1A).

> b.   <u>Ground 1F, Petitioner's Right to Testify</u>

The PCR Court found that Petitioner's remaining claims, Grounds 1A, 1B, 1D, 1E, 1F, 1G and Subpoints 5, 6, 7, 8, 9, and

10 of the habeas petition, were no more than bald assertions, unsupported by affidavits or certifications. (Rta14 at 44-45). Nonetheless, the PCR Court addressed Petitioner's claim that counsel did not allow him to testify in court. (Ground 1F of the habeas petition).

When Petitioner testified at the PCR hearing, he admitted that his trial counsel warned him that if he testified the jury would learn about his prior convictions and choose not to believe him. (Rta14 at 8-9, 15-18.) The PCR Court noted it was Petitioner himself who told the trial court he did not wish to testify. (Id. at 49.) The Superior Court affirmed, noting the trial judge properly found Petitioner had voluntarily and knowingly waived his right to testify. (Ra21 at 12.) These circumstances suggest it is only in hindsight that Petitioner wished he had testified. At the time, however, he relied on the reasonable advice of counsel that he would open himself up to impeachment by his criminal record. These circumstances do not reflect a deficient performance by Petitioner's trial counsel. Thus, Ground 1F of the petition will be denied.

c.  Ground 1E, Trial Counsel's Failure to Consult

With respect to Ground 1E of the petition, Petitioner's trial counsel failed to consult with him, Petitioner testified at the PCR hearing that trial counsel met with him a few times. (Rta14 at 7-8.) Petitioner did not feel this was sufficient,

25

particularly because he was on medication at the time and was confused. (<u>Id.</u>) Petitioner admitted he did not tell his counsel he was on medication and was confused. (<u>Id.</u> at 14.) The PCR Court denied the claim summarily. Here, Petitioner has not alleged what matters counsel failed to consult him about would have made any difference in the outcome of the trial. Thus, the Court will deny Ground IE of the petition because it was reasonable for the state court to conclude that Petitioner failed to satisfy the prejudice prong.

> d.   <u>Ground 1.2, Ineffective Cross-Examination</u>

In Ground One, Subpoint 2 of the petition, Petitioner alleged trial counsel was ineffective for failing to cross-examine Carmen Garcia, for the purpose of impeaching her testimony based on her prior convictions. Petitioner also alleged in Ground 1B that trial counsel generally failed to cross-examine effectively.

The Superior Court noted Petitioner had not offered any support for his post-conviction claim that counsel should have impeached Carmen Garcia with her prior convictions. (Ra21 at 12.) Respondents argued Petitioner made contradictory statements in his brief, alleging ineffective assistance for failure to cross-examine Carmen Garcia, but also acknowledging that his trial counsel vigorously cross-examined the State's witnesses. (Answer at 40)(citing Ra12 at 36, 40-50.) With

regard to the prejudice prong of the <u>Strickland</u> test, Respondents noted Carmen Garcia was only one of four eyewitnesses who identified Petitioner as one of the robbers. (<u>Id.</u>)  Petitioner did not elaborate on his general claim that trial counsel failed to cross-examine effectively.

In this case, even if trial counsel could have impeached Carmen Garcia based on her prior convictions, the outcome of the trial would not likely have been different because Carmen Garcia was not the only eyewitness who identified Petitioner as one of the robbers; there were several other eyewitnesses who identified Petitioner.  (Rta8 at 51-70.)  Therefore, the jury was not as likely to discredit her identification of Petitioner based on her criminal record, and the outcome of the trial was not likely to have been different if counsel had attempted to impeach the witness.  Additionally, given the deference owed to state court decisions on habeas review, even when the state court summarily denied a claim, Petitioner cannot establish trial counsel was generally ineffective in cross-examination without explaining how counsel was deficient.  For this reason, this Court will deny Ground 1B, and Ground One, Subpoint 2 of the petition.

### e.   Ground 1D, Failure to Hire an Expert

Petitioner also claimed counsel should have hired an expert witness (Ground 1D), and the PCR Court dismissed this claim.

(Petr's Mem. at 14-15.)   The Superior Court affirmed the PCR Court's dismissal of this claim, noting Petitioner failed to provide any affidavit describing the proposed expert testimony. (Ra21 at 7-8.)

Here, Petitioner alleged an expert witness could have undermined certain of the eyewitness identifications of Petitioner by attacking the identification procedures used by police.  (Petr's Mem. at 14.)  Petitioner did not further describe the proposed expert testimony or how it would have undermined the identifications; therefore, he did not establish that counsel's performance was somehow deficient for failing to obtain an expert.  Even if the jury called into question the identification procedures used by police, several eyewitnesses identified Petitioner as the robber in the courtroom, and they testified that they recognized his voice, eyes and ponytail. (Rta8 at 51-70.)  Thus, the outcome of the trial would not likely have been different if expert witness testimony had been presented.  The Court will deny Ground 1D of the petition.

f.  <u>Ground 1D, Failure to Investigate and Prepare</u>

Petitioner also claimed trial counsel failed to investigate and prepare for trial, and that counsel failed to consult with Petitioner.  (Ground 1G of the habeas petition.)  The PCR Court rejected Petitioner's claim, noting Petitioner had not established what additional investigation would have revealed.

28

(Rta14 at 43, 45.)  Here, Petitioner has likewise failed to establish how counsel's pretrial investigation was deficient or why the result of the proceeding might have altered if counsel had prepared for trial any differently.

On habeas review, it is not enough to generally allege that if things had been done differently, the outcome might have been affected.  It is clear from the trial court record that counsel conducted an investigation that included Petitioner's alibi, corroborated with video evidence, and that counsel had knowledge of the content of the police records.  Petitioner has not established that the state court decision unreasonably applied the Strickland test in finding trial counsel adequately investigated and prepared for trial.  Therefore, this Court will also deny Ground 1G of the petition.

g.  Ground 1.5, Failure to Object

Respondents argued Ground One, Subpoints 5, 6, and 7 are without merit, as found by the PCR Court without further discussion.  When a state court summarily denies a claim "a habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."  Cullen v.

Pinholster, 131 S.Ct. at 1402 (quoting Richter, 131 S.Ct. at 786)).

In Ground 1, Subpoint 5, Petitioner alleged counsel should have objected to evidence regarding endangering the welfare of a child or counsel should have sought dismissal of these counts, as contrary to the weight of the evidence and prejudicial to Petitioner.  The evidence showed Petitioner robbed the inhabitants of an apartment at gunpoint, an apartment that contained several minors.  (Rta8 at 56-57.)  Trial counsel would very likely have been unsuccessful in dismissing these counts. "[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.  Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000)(citing Com v. Carpenter, 725 A.2d 154, 161 (Pa. 1999) (citation omitted)).  Therefore, the state court could reasonably have determined that counsel was not deficient for failing to try to limit the evidence or dismiss the counts.

### h.  Ground 1.6, Opening Statement

In Ground 1, Subpoint 6, Petitioner alleged trial counsel was deficient for not mentioning in opening statements that the defense would present videotape evidence establishing Petitioner's alibi.  Respondent correctly asserted that the videotape had not been ruled admissible at the time of opening statements because the court did not have the special equipment needed to view it at the pretrial conference.  (Answer at 43,

30

citing Transcript of Pretrial Conference ("Rta3") at 7-8.)
Defense counsel stated he was aware that mentioning the
videotape in opening statements would be done at his own peril,
given there was no ruling on its admissibility.  (Rta3 at 7.)
The Pathmark video was shown to the jury during trial, in
support of Petitioner's defense that he was in the store with
Maria Concepcion at the time of the robbery, and counsel
discussed the video in closing arguments.  (Rta7 at 26-27, 46-
51, Rta8 at 32-33, 40-44.)

There are many reasons why trial counsel may have decided
to hold that argument until closing including: a) it was not
deemed admissible before opening statements; b) presenting the
evidence in a manner consistent with the burden of proof; c) not
promising too much since the video only showed a person and
relied on supplemental testimony to prove it was petitioner; and
d) holding the evidence to the end might maximize its impact on
deliberations.  Under the circumstances, it was reasonable for
the state court to conclude Petitioner did not show the outcome
of the trial would likely have been different if counsel had
also mentioned the video in opening statements or that the
decision to hold it to the end was an unreasonable decision.

    i.  Ground 1.7, Jury Instruction

In Ground One, Subpoint 7, Petitioner claimed that counsel
should have objected to a jury instruction that constituted an

ultimatum.  In his PCR brief, Petitioner explained that during jury deliberations, the judge received a note from the jury, asking to watch the Pathmark video and the direct and cross examinations of Maria Morales, Julio, Carmen, Norma, and Officer [Ruben] Alicea.  (Ra15, Doc. No. 9-15 at p. 88 of 102).  The judge explained that it would take a long time to replay all of the requested videotape, and while the jury could watch whatever they wished, they would need to end at 3:30 that day and come back after the weekend to watch any further testimony.  (Id. at p. 89 of 102.)

The jury came back that afternoon and asked to see only part of Julio's testimony on direct, all of Norma's testimony, all of Officer Alicea's testimony, and the Pathmark video. (Id.)  The judge was afraid the jury had misunderstood his comments, and said he would explain to the jury that there was no deadline on when they had to make their decision about what parts of the video they wanted to see.  (Id. at 89-90.) Petitioner concedes that the judge explained this to the jury but asserted it was too late to erase the damage, the jury no longer requested to see a playback of the testimony of Maria Morales or Carmen Garcia.  (Id. at 90.)  Petitioner characterized the judge's first instruction about the video playback as an "ultimatum" which forced the jury to reach a

verdict without viewing the videotaped testimony of Maria Morales and Carmen Garcia.  (Id.)

The record shows that that trial court assured the jury they could watch anything they wished, and the jury watched the videotaped testimony they wanted to see before reaching a verdict.  (Trial Transcript ("Rta9") at 3-14)[Doc. No. 10-9.] The jury did not reach its verdict on the day they were told they would have to end at 3:30p.m.; they returned after the weekend and finished deliberations. (Trial Transcript ("Rta10") at 1-12 [Doc. No. 10-10.]  There is no indication that the jury believed it could not watch all of the video playback that it wanted to see before reaching a verdict.  Thus, Petitioner has not established that the state court unreasonably applied the prejudice prong of Strickland by denying this claim.  For these reasons, Ground One, Subpoint 7 will be denied.

          j.  Ground 1.8, Cumulative Errors by Trial Counsel

In Ground One, Subpoint 8, Petitioner contended trial counsel's cumulative errors constituted ineffective assistance. Respondents argued that none of the alleged deficiencies by trial counsel, singly or in combination, denied Petitioner a fair trial.  (Answer at 44.)  Respondents cited the PCR Court's findings that trial counsel was diligent and vigorous in Petitioner's defense, doggedly pursuing a mistrial and

presenting an elaborate alibi defense.  (Answer at 45)(citing
Rta14 at 28, 48.)

After reviewing all of the state court records and the
arguments Petitioner presented in support of his ineffective
assistance of counsel claims, this Court finds the state court
could reasonably have determined that Petitioner was not denied
a fair trial due to counsel's alleged cumulative errors.  The
State simply had a strong case with multiple eyewitnesses to the
robbery, at least one of whom knew Petitioner well, and who
identified Petitioner as one of the robbers.  Counsel was
persistent in pursuing a mistrial and went to great lengths to
present an alibi defense.  Thus, the Court will deny Ground One,
Subpoint 8.

> k.  <u>Ground 1.9, Ineffective Assistance of Appellate
> Counsel</u>

Petitioner claimed that appellate counsel was ineffective
for failing to raise Petitioner's pro se claims on direct appeal
(Ground One, Subpoint 9).  The Superior Court affirmed the PCR
Court's dismissal of this claim on the merits because none of
the arguments would have succeeded on direct appeal.  (Ra21 at
14.)

Petitioner cannot show that he was prejudiced by appellate
counsel's failure to raise claims on direct appeal because
Petitioner was allowed to bring those claims in his post-

conviction proceeding, and the PCR Court addressed and denied the claims.  Therefore, this Court will deny Ground 1, Subpoint 9 for failure to establish the state court unreasonably applied the prejudice prong of <u>Strickland</u>.

### l.   <u>Ground 1.10, Trial Court's Cumulative Errors</u>

Petitioner alleged the trial court's cumulative errors violated the Due Process Clause of the United States Constitution and the New Jersey Constitution.  (Ground One, Subpoint 10).  The PCR Court denied this claim as meritless, without further discussion.  (Rta14 at 44-45.)  First, there is no remedy for claims asserting a violation of state law on federal habeas review.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Second, Petitioner did not establish any trial court errors upon direct appeal or in the post-conviction proceeding. Thus, it was reasonable for the state courts to deny his argument that trial court errors cumulatively violated his right to Due Process.  Petitioner's claim in Ground One, Subpoint 10 will be denied on the merits.

### m.   <u>Ground 1.11, Denial of PCR Hearing</u>

Finally, in Ground 1, Subpoint 11, Petitioner alleged that he was denied an evidentiary hearing in support of his motion for post-conviction relief.  Petitioner was allowed a limited evidentiary hearing, but the PCR Court did not allow Petitioner

to address claims that he had failed to support with affidavits and certifications in his submissions to the court.  (Rta14 at 45-50.)

"The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998).  The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.  Id.  Thus, Petitioner's general assertion that he was entitled to an evidentiary hearing on all of his claims in the post-conviction proceeding is not cognizable here. See Gatson v. Bartkowski, 2013 WL 2459905, at *24 (D.N.J. June 6, 2013)(denying habeas claim that PCR counsel was ineffective, and PCR Court denied an evidentiary hearing).  Ground One, Subpoint 11 of the habeas petition will also be dismissed.

## IV. Conclusion

For the reasons set forth above, the Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 [Doc. No. 1] will be denied.  Grounds 1C and Ground One, Subpoints 3 and 4 are denied because they are procedurally defaulted.  Grounds 1A, 1B, 1D-1G,

36

and Ground One, Subpoints 1, 2, and 5-11 are denied on the merits.  An appropriate order follows.

V.    Certificate of Appealability

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter.  Third Circuit Local Appellate Rule 22.2.  The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The discussion of Petitioner's claims above demonstrates that Petitioner has not made such a showing, and this Court will not issue a certification of appealability.

At Camden, New Jersey                    s/ Noel L. Hillman

                                         Noel L. Hillman
                                         United States District Judge

Dated:  February 24, 2015